**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JOHN A. VASSEN,

   Petitioner,

v.                                                                    No. 15-243-DRH

UNITED STATES OF AMERICA,

   Respondent.

## MEMORANDUM and ORDER

### INTRODUCTION

Pending before the Court is petitioner John A. Vassen's motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 (Doc. 1). Petitioner's non-attorney relative, Joseph Vassen has also filed a memorandum in support of the 2255 petition (Doc. 1-1) and a supplemental memorandum in support of the petition (Doc. 2).

Based on the record and the following, the Court **STRIKES** the memorandum in support of the 2255 petition (Doc. 1-1), **STRIKES** the supplemental memorandum in support of the 2255 petition (Doc. 2), and **DENIES** the petitioner's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1).

Further, having closely examined the record, the Court concludes that an evidentiary hearing is not necessary in this matter. It is proper to deny a § 2255 petition without an evidentiary hearing if "the motion and the files and records of

the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *Cooper v. United States,* 378 F.3d 638, 641–42 (7th Cir. 2004) (district court did not abuse its discretion in denying petitioner an evidentiary hearing where petitioner did not provide additional facts or assertions that would warrant a hearing).

## BACKGROUND

Frederick Bathon served as the Madison County, Illinois, County Treasurer from November, 1998 through December 2009. As treasurer, Bathon was responsible for conducting annual Illinois tax lien auctions. At these auctions, investors bid to purchase tax lien certificates issued against delinquent tax payers. Investors are supposed to compete to purchase these tax liens by bidding on the interest rate the property owner will be required to pay prior to redeeming the tax lien attached to the owner's property. The bid opens at no more than the statutory maximum of 18% and, through a competitive bidding process, can be driven as low as 0 percent. The bidder offering the least penalty percentage rate, *i.e.,* the bidder who is willing to allow the owner to redeem his property for the smallest penalty, is allowed to purchase the tax lien.

When Bathon took office, a competitive bidding process was in place. Thus, participating investors had the opportunity to "bid down" the previous bid until only the winning bid remained. The competitive bidding process appears to have continued through 2004 – when the average successful interest rate bid at the annual Madison County tax sale was 3.0%. However, in 2005, Bathon

implemented a "no trailing bid" policy. Under Bathon's new policy, rather than accepting the lowest of a series of bids, investors were required to bid simultaneously. Bathon's staff then purported to accept the first bid that was heard for the lowest interest rate.

After implementation of Bathon's new bidding process, there was a dramatic increase in the average interest rate at the tax auctions.  In 2005, tax liens were sold at only two rates: 12% and 18%. In 2006, 81.51% of the liens were sold at 18%. In 2007, 99.03% of the liens were sold at 18%. And in 2008, 96.86% of the liens were sold at 18%. Thus, by 2007 and 2008, competitive bidding was essentially eliminated and distressed homeowners were charged the statutory maximum interest rate (18%) on nearly every property tax lien sold.

Eventually, federal agents commenced a criminal investigation to determine whether Bathon was structuring the tax sales in a way that eliminated competitive bidding and allowed tax buyers to engage in price fixing. The investigation revealed that Vassen and other investors engaged in collusion to restrain competition, enabling them to purchase the tax liens at non-competitive interest rates. Specifically, the subject investors reached an implicit mutual understanding that they would typically bid only the statutory maximum interest rate of 18% and not compete to reduce the interest rate when purchasing property tax liens. These same investors made campaign contributions solicited by Bathon so he would continue structuring the tax sales in a way that eliminated competitive bidding.

For his part, Vassen obtained approximately $696,616 in excess interest from participating in the scheme.

Ultimately, Bathon agreed to cooperate with the investigation and confessed to his role in the crime. Bathon identified a number of campaign contributors who were knowing participants in the scheme, including Vassen. Bathon claimed these contributors gave him increased campaign donations as part of the scheme. The investigation corroborated Bathon's claims, revealing that Vassen's campaign contributions to Bathon increased 627% while the scheme was ongoing.

Investigators also interviewed Frank Miles, who succeeded Bathon as treasurer of Madison County. Miles acknowledged he received thousands of dollars in campaign funds from Vassen. Further, Miles reported that Vassen and another investor personally lobbied him to continue Bathon's policy at a meeting at Fiona's restaurant in Edwardsville. Miles declined and implemented a competitive bidding process. Upon implementation of the competitive bidding process, interest rates plummeted to an average rate of 5.83% during the tax sale that Miles conducted in March of 2010. Thereafter, Vassen made no further donations to Miles.

During the well-publicized investigation, Vassen retained John O'Gara as counsel. O'Gara preemptively contacted the US Attorney's office in an effort to lobby against charges being filed against Vassen. O'Gara negotiated a proffer letter and arranged for an interview to take place including Vassen, O'Gara, and representatives of the FBI and the US Attorney's office on August 16, 2012. In

April 2013, the U.S. Attorney's office advised O'Gara that Bathon had provided incriminating statements against Vassen. On August 5, 2013, O'Gara met with an Assistant United States Attorney and reviewed the evidence against Vassen. Vassen declined to attend the meeting.

The parties discussed the applicability of the sentencing guidelines, plea negotiations, and the charges that Vassen could face in an indictment. The potential charges included honest services fraud predicated on bribery of a public official. The sentencing ramifications for a conviction based on honest services fraud were more severe than the sentence Vassen would face under the Sherman Act. The government then gave all of the subject investors a date certain by which they either needed to plead guilty or the case would be submitted to a federal grand jury for indictment.

Thereafter, the attorneys continued to discuss the applicability of the sentencing guidelines, plea agreement terms, and the content of the stipulation of facts. Vassen, a licensed attorney, was an active participant in the negotiations. At one point, Vassen even requested that certain language be stricken from the stipulation of facts. Vassen's requested revisions were prompted by the advice of the civil attorney who represented him as part of a class action civil lawsuit that had been filed against him. The deadline by which the subject investors were required to plead guilty or proceed to the grand jury was extended to allow negotiations to continue.

Ultimately, O'Gara, Vassen, and the U.S. Attorneys negotiated and completed a plea agreement. Vassen's plea agreement was indistinguishable from those reached by two other teams of attorneys in companion cases (*United States v. Scott McLean*, 3:13-cr-30233-DRH and *United States v. Barrett Rochman*, 3:13-cr-30222-DRH).

As part of the negotiated plea, Vassen was charged by information with violating the Sherman Antitrust Act, in violation of 15 U.S.C. § 1. On October 17, 2013, Vassen entered a guilty plea pursuant to his agreement with the government. In the plea agreement, Vassen agreed that, with very limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence. Specifically, the waiver in the plea agreement stated as follows:

1. The Defendant understands that by pleading guilty, he is waiving all appellate issues that might have been available if he had exercised the right to trial. The Defendant is fully satisfied with the representation received from defense counsel. The Defendant acknowledges that the Government has provided sufficient discovery to make an informed decision about entering into a pre-indictment plea agreement. Known information, if any, establishing the factual innocence of the defendant has been turned over to the defendant. The Government acknowledges the continuing duty to provide such information. The defense has had access to Government witnesses and has interviewed material witnesses. The Defendant has reviewed the evidence and has discussed the Government's case, possible defenses and defense witnesses with defense counsel.

2. The Defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack. However, in exchange for the recommendations and concessions made by the United States in

this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence. The Defendant acknowledges that in the event such an appeal is taken, the Government reserves the right to fully and completely defend the sentence imposed, including any and all factual and legal findings supporting the sentence, even if the sentence imposed is more severe than that recommended by the Government.

3. Defendant's waiver of his right to appeal or bring collateral challenges shall not apply to: 1) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit, which is declared retroactive by those Courts, and which renders the defendant actually innocent of the charges covered herein, and 2)appeals based upon Sentencing Guideline amendments which are made retroactive by the United States Sentencing Commission (see U.S.S.G. § 1B1.10). The Government reserves the right to oppose such claims for relief.

4. Defendant's waiver of his appeal and collateral review rights shall not affect the Government's right to appeal Defendant's sentence pursuant to Title 18, United States Code, Section 3742(b). This is because United States Attorneys lack any right to control appeals by the United States, through plea agreements or otherwise; that right belongs to the Solicitor General. 28 C.F.R. § 0.20(b).

5. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any Department or Agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation, any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act of 1974, Title 5, United States Code, Section 552a.

6.  Defendant waives all claims under the Hyde Amendment, Title 18, United States Code, Section 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

(criminal case, Doc. 6, p. 8-10).

At the October 17, 2013, hearing, Magistrate Williams questioned Vassen with regard to his understanding of the appellate waiver in his plea agreement. The Court specifically notes the following:

THE COURT:

Do you understand that, under some circumstances, you or the government may have a right to appeal any sentence that the district judge imposes? However, in your plea agreement you are waiving most, but not all, of your appellate rights. Do you understand all of that?

THE DEFENDANT:

Yes, Your Honor.

(criminal case, Doc. 37 p. 19)

***

THE COURT:

All right. Now turning back to the Plea Agreement, page 8, section 3, paragraph 1, it says that you understand that by pleading guilty you're waiving all appellate issues that might have been available if you'd exercised your right to trial. Did you understand that?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

And then going on to paragraph 2 on page 9, and again paragraph 3, continuing all the way through page 10, there's details about your appeal waiver. And in a nutshell it says you understand that you are

waiving all of your rights to attack your conviction or Pg. 25 sentence through appeal or habeas petition or any other collateral attack, except in three limited circumstances. Did you understand it that way?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

So there's three exceptions to your complete waiver of your right to appeal or attack your conviction of sentence I want to talk to you about. First, if the district judge were to sentence you to a sentence that is above the high end of the guidelines range he ultimately determines to be applicable, then you could appeal the reasonableness of that sentence. Did you understand that exception?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

So, for example, in this case if you're correct and the government's correct, and your guidelines range is ten to 16 months, if you got a sentence above that range of 17 months or more, under those circumstances you could appeal the reasonableness of that sentence. Is that how you understand it?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

If, under those circumstances, you received a sentence of 16 months or less, you couldn't appeal that sentence. Do you understand that?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

Again, do you also understand that it's up to the district judge to decide what your guidelines range actually is?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

In addition to that, the second exception is that you could appeal or attack your conviction if there's a subsequent change in interpretation of the law by the United States Supreme Court or the Court of Appeals for the Seventh Circuit which are declared retroactive by those courts and renders you innocent of the charges contained in the information. Did you understand that?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

The last exception is, you could bring an appeal based upon the guidelines amendments that are made retroactive by the Sentencing Commission. Did you understand that third limited exception? Pg. 26 up to the district judge to decide what your guidelines range actually is?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

In addition to that, the second exception is that you could appeal or attack your conviction if there's a subsequent change in interpretation of the law by the United States Supreme Court or the Court of Appeals for the Seventh Circuit which are declared retroactive by those courts and renders you innocent of the charges contained in the information. Did you understand that?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

The last exception is, you could bring an appeal based upon the guidelines amendments that are made retroactive by the Sentencing Commission. Did you understand that third limited exception?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

Do you believe you understand the appeal waiver contained in your Plea Agreement?

THE DEFENDANT:

Yes, Your Honor, I do.

THE COURT:

Do you believe you understand everything contained in this Plea Agreement and Cooperating Addendum to the Plea Agreement?

THE DEFENDANT:

I believe I do, Your Honor.

(criminal case, Doc. 37 pp. 24 - 26)

Additionally, the Court notes the following relevant exchanges during the

October 17, 2013 hearing:

THE COURT:

Based upon the defendant's responses to my questions, my own personal observations of the defendant, and counsel's representations, I find the defendant is competent to understand these proceedings and to enter a knowing plea.

Mr. Vassen, have you had enough time to review your case with Mr. O'Gara, who is here with you now?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

Are you satisfied with Mr. O'Gara's representation of you?

THE DEFENDANT:

I am, Your Honor.

THE COURT:

Mr. Vassen, I want to remind you that under the constitution and laws of the United States, you have an absolute right to a jury trial on the charge contained in the information and an absolute right to enter a not guilty plea. Do you understand that you have those absolute rights?

THE DEFENDANT:

Yes, Your Honor.

(criminal case, Doc. 37 pp. 12-13)

***

THE COURT:

Having discussed all of your rights with you, do you still wish to go forward with a guilty plea at this time, Mr. Vassen?

THE DEFENDANT:

Yes.

THE COURT:

Mr. Vassen, have you discussed with Mr. O'Gara the charge contained in the information to which you intend to plead guilty?

THE DEFENDANT:

Yes.

(criminal case, Doc. 37 p. 16).

***

THE COURT:

Okay. Mr. Vassen, do you understand the essential elements of the offense of a violation of the Sherman Antitrust Act as charged in the information?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

Do you understand the government would have to prove those essential elements beyond a reasonable doubt at trial in order for you to be found guilty if you

went to trial?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

I previously told you what the maximum possible penalties are: Ten years in prison; fine of up to $1 million, or twice the gain associated with the offense; up to three years of supervised release following a term of imprisonment; a $100 mandatory special assessment.

Do you believe you understand those possible consequences of your guilty plea?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

Has anyone threatened you or forced you in any way to plead guilty?

THE DEFENDANT:

No, Your Honor.

THE COURT:

Has anyone, including your attorney, made any promise as to what your sentence will or will not be?

Pg. 18

THE DEFENDANT:

No, Your Honor.

THE COURT:

Under the Sentencing Reform Act of 1984, the United States Sentencing Commission issues guidelines for judges to follow in determining a sentence in criminal cases. The United States Supreme Court has made those guidelines advisory rather than mandatory for

judges. Have you and your lawyer talked about how the Sentencing Commission guidelines might apply to your case?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

While the Court must be advised by those guidelines in determining a particular sentence to impose, the Court will consider certain statutory factors under Section 3553 of Title 18, including, among others, the nature and circumstances of the offense and the history and characteristics of the defendant. Court will impose a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to adequately deter future criminal conduct. Have you and your lawyer talked about how these statutory factors outside of the guidelines might apply to your sentence?

THE DEFENDANT:

Yes, Your Honor.

(criminal case, Doc. 37 pp. 16-18

On February 19, 2014, Vassen appeared before the District Court for sentencing, at which time he was sentenced to 24 months' imprisonment (criminal case, Doc. 25). Judgment was entered on February 19, 2014 (criminal case, Doc. 28). Vassen did not file a direct appeal.

Vassen filed his original post-conviction petition on March 5, 2015 (Doc. 1). The petition included a memorandum in support (Doc. 1-1). The original 2255 petition purports to contain three complaints of error. For his first complaint of error Vassen contends his counsel was ineffective in that he failed to adequately advise Vassen as to the consequences of pleading guilty. For his second claim of error Vassen claims his counsel was ineffective in that he failed to adequately

investigate his case because he did not obtain a forensic accountant. For his third claim of error Vassen merely states "Will be included in Supplemental Memorandum." A supplemental § 2255 memorandum was filed on March 11, 2015 (Doc. 2). The supplemental memorandum asserts Vassen's counsel was ineffective because he failed to object when Vassen was sentenced in 2014 using the 2013 Guideline Manual. Only the original post-conviction petition (Doc. 1) was signed and submitted by Vassen. The memorandum in support (Doc. 1-1) and the supplemental § 2255 memorandum (Doc. 2) were signed and submitted by Vassen's non-attorney brother, Joseph Vassen.

On April 14, 2015, the government filed a motion to dismiss Vassen's Section 2255 petition (Doc. 7). The government argued Vassen entered a knowing, intelligent, and voluntary guilty plea and, in so doing, waived his right to present any collateral challenge to his conviction or sentence. In response, Vassen argued the waiver is not enforceable because the plea agreement itself was the product of ineffective assistance of counsel (Doc. 12). In light of Vassen's assertion, out of an abundance of caution, the Court denied the motion to dismiss and directed the government to respond to Vassen's petition (Doc. 13).

## LEGAL STANDARD

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. More precisely, "[r]elief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a

fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). As a result, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

Of course, a § 2255 motion does not serve as a "recapitulation nor a substitute for direct appeal." *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992). Thus, a defendant cannot use a § 2255 motion to challenge "(1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Id.*

## PLEADINGS FILED BY JOSEPH VASSEN

Vassen's signature appears on the original 2255 petition, docketed on March 5, 2015. However, the memorandum in support of the 2255 petition (Doc. 1-1) and the supplemental memorandum (Doc. 2) were not signed by Vassen. Instead, these pleadings were signed and submitted by Vassen's brother, Joseph Vassen. No explanation is provided as to why Joseph Vassen is signing and submitting the subject pleadings on behalf of the petitioner. The Court notes Joseph Vassen is not a licensed attorney and is not otherwise lawfully authorized

to sign pleadings in federal court. Additionally, Joseph Vassen has not entered an appearance in petitioner's case.

Section 2255(a) provides that "[a] prisoner in custody under sentence of a court …." may move for release. Pursuant to Section 2242, such a petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242; *see also* Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings For The United States District Courts (§ 2255 motion must "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant"); SDIL-LR 8.1(b) (requiring "a prisoner" to sign and verify their own § 2255 petition).

To the extent that Joseph Vassen is attempting to act on petitioner's behalf in accord with Section 2242, "[i]t is well-settled that a next-friend may not file a petition for a writ of habeas corpus on behalf of a detainee if the detainee himself could file the petition." *Wilson v. Lane,* 870 F.2d 1250, 1253 (7th Cir. 1989). Accordingly, a next friend applicant must, among other things: "explain why the detainee did not sign and verify the petition. If the next-friend cannot do so, the court is without jurisdiction to consider the petition." *Id.* (internal quotation and citations omitted). *See also Whitmore v. Arkansas,* 495 U.S. 149, 162, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (describing the requirements for establishing next friend standing). No such explanation accompanied the subject pleadings. Moreover, as petitioner signed the original 2255 petition, there is no indication that he was unable to sign and file the supporting memoranda.

The Court notes that Joseph Vassen submitted an Illinois property short form power of attorney along with the memorandum in support of the petitioner's Section 2255 petition. This, however, is insufficient for purposes of establishing next friend standing. *See Whitmore v. Arkansas*, 495 U.S. 149, 162, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Wilson v. Lane*, 870 F.2d 1250, 1253 (7th Cir. 1989). Moreover, by its express terms, the Illinois POA form is limited to matters affecting Illinois real estate transactions.

Considering the above, the Court concludes that Joseph Vassen, a non-lawyer, does not have the authority to file habeas pleadings on behalf of his brother. Accordingly, the memorandum in support of the 2255 petition (Doc. 1-1) and the supplemental memorandum (Doc. 2) are **STRICKEN** and will not be considered by the Court. Only the original Section 2255 petition, signed by the petitioner, will be considered by the Court.

## ANALYSIS

### Plea Agreement Waiver

As previously noted, in response to the government's motion to dismiss, Vassen argued the appellate waiver contained in his plea agreement is not enforceable because the plea agreement itself was the product of ineffective assistance of counsel (Doc. 12). In light of Vassen's assertion, out of an abundance of caution, the Court denied the motion to dismiss and directed the government to respond to Vassen's petition (Doc. 13). Now that the matter has

been fully briefed, the Court will assess the issue of waiver before moving on to Vassen's claims of ineffective assistance of counsel.

A defendant may validly waive the right to collaterally attack his conviction or sentence as part of a valid plea agreement. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (*citing Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999)). Courts generally uphold and enforce such waivers with limited exceptions. The limited exceptions, relevant to the instant case, include when the plea agreement was involuntary or the defendant claims ineffective assistance of counsel for performance directly related to negotiation of the plea agreement. *Jones,* 167 F.3d at 1145.

There is no dispute that in his plea agreement, Vassen waived his right to appeal or contest "any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater) ,,,, "

The record utterly refutes any contention that Vassen's guilty plea was unknowing, involuntary or the product of duress. From the beginning, Vassen, a licensed attorney, was actively involved in his plea negotiations – even requesting revisions to the stipulation of facts. During the October 17, 2013 hearing, the Court engaged in a thorough plea colloquy with Vassen. The Court ensured that

Vassen was competent and understood his right to trial and the consequences of pleading guilty. The transcript further reveals that Vassen had carefully examined the plea agreement and fully grasped the rights he was giving up by entering a guilty plea.  The Court explained the plea agreement to Vassen, ensured that Vassen had a full opportunity to discuss the agreement with counsel and make an informed decision.

Considering the above, it is evident that Vassen entered into a knowing and voluntary plea, with full awareness of the applicable post-conviction waivers. Under the law of this Circuit, as discussed above, this waiver is enforceable unless, as Vassen contends, the plea agreement itself was the product of ineffective assistance of counsel. For the reasons discussed below, the Court concludes that Vassen's ineffective assistance of counsel claims are without merit and/or have been waived.

**Ineffective Assistance of Counsel Claims**

Petitioner makes the following allegations and claims premised on the denial of his Sixth Amendment right to counsel:

(1) Counsel failed to adequately explain, investigate and/or offer an informed opinion as to the consequences of pleading guilty

(2) Counsel failed to provide a forensic accountant/expert to rebut the Government's loss claims

(3) Counsel failed to fully object to any ex post facto issues at sentencing[1]

---

[1]  Notably, this claim is only asserted in the supplemental pleading that has been stricken by the Court.

Ineffective assistance of counsel claims relating to anything other than a plea negotiation are barred by an enforceable waiver. *Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000); *see also Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (finding that because the defendant's ineffective assistance of counsel claim related only to counsel's performance with respect to sentencing, it had nothing to do with the issue of a deficient negotiation of the waiver and was barred by a waiver).

Here, the only ineffective assistance of counsel claim that arguably relates to the negotiation of the plea agreement is that counsel failed to inform Vassen of the consequences of pleading guilty.

In evaluating this claim, the Court applies the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (*citing Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984)). Petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the petitioner in such a way that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 695. In the context of a guilty plea, a Section 2255 petitioner can prove deficient performance by showing that his lawyer did not make a good-faith effort to discover the facts relevant to his sentencing and to analyze those facts in terms of the applicable legal principles. *See United States v. Cieslowski,* 410 F3d 353, 359 (7th Cir. 2005), *cert. denied,* 546 U.S. 1097 (2006).

With regard to prejudice, a petitioner must come forward with objective evidence demonstrating a reasonable probability that, but-for counsel's advice, the petitioner would not have accepted the plea. *See McCleese v. United States,* 75 Ff.3d 1174, 1179 (7th Cir. 1996). The Seventh Circuit has "stated many times that a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice." *Bethel,* 458 F.3d at 718. In the instant case, Vassen has not established deficient performance or prejudice.

As a preliminary matter, the record does not support the claim that Vassen's attorney failed to advise him of the consequences of pleading guilty. and/or that Vassen was otherwise unaware of the same. The statutory terms of imprisonment were outlined in Vassen's plea agreement. During the October 17, 2013 plea hearing, Magistrate Judge Williams informed Vassen of the statutory sentencing ranges and potential ramifications of pleading guilty. Vassen, an attorney who had been actively involved in the plea negotiation process, acknowledged that he understood. Vassen also acknowledged that he had discussed these matters with his attorney and was satisfied with his attorney's performance. Additionally, Vassen's attorney's affidavit details the extensive amount of time spent engaging in discussions with Vassen regarding the investigation, the potential charges, the applicable law, Vassen's options under the law, and the ramifications of pleading guilty or pursuing a trial (Doc. 16-3). Finally, when Vassen pled guilty he (1) stipulated to the factual basis for the plea and admitted that the government could prove the allegations contained in the

Information; (2) stated that he understood everything contained in the stipulation of facts; and (3) personally edited the stipulation of facts because of two errors he noticed (criminal case, Doc. 37 pp. 28-30). Considering the above, it is evident Vassen had a full appreciation of the consequences of pleading guilty

Assuming for the sake of argument that Vassen's counsel failed to inform him as to the consequences of pleading guilty, Vassen still fails to establish deficient performance or prejudice. First, even a gross mischaracterization as to the sentencing consequences of a plea is not, standing alone, proof of constitutional deficiency. *Bethel v. United States,* 458 F.3d 711, 717 (7th Cir. 2006). Second, Vassen offers no specific allegations in support of his claim (either in his original 2255 petition or in the stricken pleadings). Vassen does not specify, whatsoever, what "consequences" he is referring to. Nor does he specify whether these "consequences" were (for example) mischaracterized, miscalculated, or withheld completely. Likewise, Vassen offers no objective evidence demonstrating that but-for counsel's advice, he would not have accepted the plea. Accordingly, Vassen has utterly failed to establish either deficient performance or prejudice. Vassen's empty allegations simply cannot overcome *Strickland's* strong presumption of reasonable professional assistance. *See Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir. 1987) ("few petitioners will be able to pass through the 'eye of the needle' created by *Strickland*.").

Based on the above, the Court concludes Vassen entered into a knowing and voluntary plea. In addition, the Court finds the plea itself was not the product

of ineffective assistance of counsel. Accordingly, under the law of this Circuit, the waiver provision contained in Vassen's plea agreement is enforceable.

**Other Ineffective Assistance of Counsel Claims**

Vassen's remaining claims pertaining to his attorney are that (1) Counsel failed to provide a forensic accountant/expert to rebut the Government's loss claims and (2) Counsel failed to fully object to any ex post facto issues at sentencing. Neither claim relates to negotiation of the plea agreement. As previously noted, ineffective assistance of counsel claims relating to anything other than plea negotiations are barred by an enforceable waiver. *Bridgeman v. United States,* 229 F.3d 589, 593 (7th Cir. 2000); *see also Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000). For reasons discussed herein, the Court finds that the waiver provision is enforceable. Because these claims are unrelated to his plea negotiations, they are barred by the waiver provision in his plea agreement.

The Court notes, however, even if these claims were not waived, they would fail on the merits. Vassen asserts that counsel was ineffective by failing to hire a forensic accountant. However, Vassen fails to identify any expert, available at the time, capable of supporting his defense. Vassen's claim is devoid of specifics and is merely speculative. As outlined in the government's briefing, this is insufficient. *See Hinton v. Albama,* 134 S. Ct. 1081, 1088, 188 L. Ed. 2d 1 (2014); *Ellison v. Acevedo,* 593 F.3d 625, 634 (7th Cir. 2010). The claim that counsel was

ineffective for failing to object to any *ex post facto* issues at sentencing is also without merit. As outlined in the government's briefing, the correct Guideline manual was utilized and there were no *ex post facto* issues. Moreover, this claim is only outlined in the stricken brief submitted by Vassen's brother.

## CERTIFICATE OF APPEALABILITY

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether Vassen's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval,* 574 F.3d at 852. A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, Vassen must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Where a district court denies a *habeas* petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 485.

As to Vassen's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing the merits of Vassen's claims.  Reasonable jurists could not debate that the petition should have been resolved in a different manner. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## CONCLUSION

The Court **STRIKES** the memorandum in support of the 2255 petition (Doc. 1-1) and the supplemental memorandum in support of the 2255 petition (Doc. 2). **FURTHER,** the Court **DENIES** Vassen's 28 U.S.C. § 2255 petition to vacate, set aside or correct sentence by person in federal custody (Doc. 1).  The Court **DISMISSES** with prejudice this cause of action and **ORDERS** the Clerk of the Court to enter judgment reflecting the same. **FURTHER**, the Court **DECLINES** to issue a certificate of appealability.

Finally, the Court notes that if Vassen wishes to appeal the dismissal of his petition, he may file a notice of appeal with this court within 60 days of the entry of judgment. Federal Rule of Appellate Procedure 4(a)(1)(B). A motion for leave to

appeal in forma pauperis should set forth the issues petitioner plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

**IT IS SO ORDERED.**

**Signed this 5th day of October, 2015.**

Digitally signed by
David R. Herndon
Date: 2015.10.05
11:50:43 -05'00'

**United States District Judge**